

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00414-CV

JUSTIN TRENT SHACKELFORD                                      APPELLANT

V.

CARTERCOPTERS, LLC D/B/A                                      APPELLEE
CARTER AVIATION
TECHNOLOGIES, LLC

----------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I.    Introduction

In two issues, Appellant Justin Trent Shackelford appeals the trial court's summary judgment in favor of Appellee Cartercopters, LLC d/b/a Carter Aviation Technologies, LLC (Carter).  We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

As this appeal's genesis is an equitable bill of review revolving around the question of service of process, a detailed factual recitation of the underlying employment-based lawsuit is unnecessary. Suffice it to say that employee Shackelford and employer Carter parted ways with Carter claiming that Shackelford owed it $19,000 in unearned, but paid, wages. After parting ways, Shackelford relocated to Massachusetts without providing forwarding information to Carter. In December 2008, Shackelford's Massachusetts-based attorney, Barbara Liftman, sent a letter to Carter's chief executive officer that challenged Carter's position on their dispute and stated that Shackelford was willing to pursue appropriate litigation in Texas through local counsel. Liftman also expressly stated the she was not licensed in Texas and that she would not be representing Shackelford in any action that Carter brought against him in Texas.

On January 16, 2009, Carter filed suit against Shackelford, listing Shackelford's address as 333 Howard Street, Northborough, Massachusetts—the address on a lease signed by Shackelford. Because Shackelford lived out of state, Carter forwarded the petition to the Texas Secretary of State's Office for service. The citation and original petition forwarded by the secretary of state to Shackelford at the 333 Howard Street address was returned by the United States Postal Service (USPS) as "Refused" on February 6, 2009. Thereafter, Shackelford failed to answer or otherwise timely appear, and on May 1, 2009, the trial court entered a default judgment in Carter's favor. Several days later, Carter forwarded a copy of the judgment to Liftman. Liftman told Carter that she had

2

attempted to contact Shackelford but that he had moved and had not left a forwarding address. According to Shackelford, on September 20, 2009, a friend informed him that an internet search revealed his name in connection with a lawsuit, prompting Shackelford to conduct his own internet search and to discover the default judgment that had been entered against him. The following day, he contacted Liftman, who informed him that she had received a copy of the judgment but had not been able to contact him. She advised him to obtain Texas counsel.

Shackelford began looking for attorneys in Wichita Falls to represent him in this matter. On October 15, 2009, he first communicated with his present counsel. Shackelford's Texas counsel filed a petition for bill of review on December 30, 2009, asserting that because Shackelford had not been properly served, the default judgment should be set aside. Shackelford supported his bill with his own affidavit. He asserted that there were two dwelling units located at 333 Howard Street, a main house and a guest house, and his mail carrier had instructed him to use 333B Howard Street as his address at the main house to distinguish it from the guest house, which continued to be denominated 333 Howard Street. He supported this with his bank statements from November 2008 to January 2009, which were addressed to 333B Howard Street. He further claimed that he had not refused or instructed his household members to refuse certified mail and that he had never been served with the suit papers. Shackelford subsequently vacated the premises and moved to Rye, New Hampshire in February 2009.

3

In July 2010, after discovery, Carter moved for summary judgment because, according to Carter, "Shackelford simply cannot show, inter alia, (1) lack of proper service, or (2) his own diligence in setting the default judgment aside." The trial court, without specifying the grounds, granted Carter's summary judgment. This appeal followed.

### III. Summary Judgment

In two issues, Shackelford claims that the trial court erred by granting summary judgment because he raised a material fact issue on (1) whether he was effectively served with process prior to the default judgment and (2) whether he was diligent in pursuing post-default remedies.

### A. Standard of Review

The review of a grant of summary judgment on a petition for bill of review is the same standard of review as for grants of summary judgment in other types of cases. *See Wolfe v. Grant Prideco, Inc.*, 53 S.W.3d 771, 773 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). That is, we review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause

of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

## B. Bill of Review

A party seeking relief under a bill of review must show the following: (1) a meritorious defense to the underlying cause of action; (2) which he was prevented from making by the fraud, accident, or wrongful act of the opposing party or official mistake; and (3) unmixed with any fault or negligence on his own part. *Baker v. Goldsmith*, 582 S.W.2d 404, 406–07 (Tex. 1979). Non-service of process, however, lessens the required showing:

> Bill of review plaintiffs claiming non-service, however, are relieved of two elements ordinarily required to be proved in a bill of review proceeding. First, if a plaintiff was not served, constitutional due process relieves the plaintiff from the need to show a meritorious defense. Second, the plaintiff is relieved from showing that fraud, accident, wrongful act or official mistake prevented the plaintiff from presenting such a defense.

> Bill of review plaintiffs alleging they were not served, however, must still prove the third and final element required in a bill of review proceeding that the judgment was rendered unmixed with any fault or negligence of their own. In *Caldwell*, we said this third and final element is conclusively established if the plaintiff can prove that he or she was never served with process. An individual who is not served with process cannot be at fault or negligent in allowing a default judgment to be rendered. Proof of non-service, then, will conclusively establish the third and only element that bill of review plaintiffs are required to prove when they are asserting lack of service of process as their only defense.

> . . . .

> In sum, when a plaintiff seeks a bill of review based solely on a claim of non-service, the bill of review procedure outlined in *Goldsmith* must be slightly modified. When a plaintiff claims lack of service, the

5

trial court should: (1) dispense with any pretrial inquiry into a meritorious defense, (2) hold a trial, at which the bill of review plaintiff assumes the burden of proving that the plaintiff was not served with process, thereby conclusively establishing a lack of fault or negligence in allowing a default judgment to be rendered, and (3) conditioned upon an affirmative finding that the plaintiff was not served, allow the parties to revert to their original status as plaintiff and defendant with the burden on the original plaintiff to prove his or her case.

*Caldwell v. Barnes*, 154 S.W.3d 93, 96–97 (Tex. 2004) (citations omitted).

A bill of review must be brought within four years of the date of the challenged judgment absent a showing of extrinsic fraud. *See Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (holding residual four-year statute of limitations in civil practice and remedies code section 16.051 applies to bill of review); *PNS Stores, Inc. v. Rivera*, 335 S.W.3d 265, 276 (Tex. App.—San Antonio 2010, pet. filed) (noting only exception to four-year limitations period for bill of review is when petitioner proves extrinsic fraud); *Manley v. Parsons*, 112 S.W.3d 335, 338 (Tex. App.—Corpus Christi 2003, pet. denied) (holding same); *Defee v. Defee*, 966 S.W.2d 719, 722 (Tex. App.—San Antonio 1998, no pet.) (same); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008).

## C. The Texas Long Arm Statute

Section 17.044 of the civil practice and remedies code designates the secretary of state to be the agent of a nonresident for service of process if the nonresident "is not required to designate an agent for service in this state, but becomes a nonresident after a cause arises in this state but before the cause is matured by suit in a court of competent jurisdiction," which is the situation here. Tex. Civ. Prac. & Rem. Code Ann. § 17.044 (West 2008). The service-of-

6

process documents provided to the secretary of state by a plaintiff must contain the name and address of the non-resident's home or home office. *See Id*. § 17.045(a) (West 2008). And, "there must be proof that the address to which the Secretary sent the citation was the defendants' home address or home office." *Barnes v. Frost Nat'l Bank*, 840 S.W.2d 747, 750 (Tex. App.—San Antonio 1992, no writ) (Peeples, J., concurring). Upon receipt of a petition against a nonresident, the secretary of state is required to immediately mail a copy of the process to the nonresident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a). Service is normally complete upon receipt by the secretary of state. *See Whitney v. L & L Realty Corp*., 500 S.W.2d 94, 96 (Tex. 1973). But if the secretary of state sends the citation and copy of the petition to the nonresident defendant using an incorrect address for the defendant, then a default judgment rendered against that defendant should be set aside. *See Royal Surplus Lines Ins. Co. v. Samaria Baptist Church*, 840 S.W.2d 382, 383 (Tex. 1992).

## D. USPS Attempted Delivery Nomenclature

USPS uses various designated terms when mail is unsuccessfully attempted to be delivered, such as "Refused," "Unclaimed," "Moved Left No Address," "Attempted Not Known," and "Return to Sender—Insufficient Address." *See Orgoo, Inc. v. Rackspace US, Inc*., 341 S.W.3d 34, 42 & n.9 (Tex. App.— San Antonio 2011, no pet.); *Walters v. Clark*, No. 01-99-01424-CV, 2001 WL 282771, at *2 (Tex. App.—Houston [1st Dist.] Mar. 22, 2001, no pet.) (not

7

designated for publication); *Barnes*, 840 S.W.2d at 750. In this case, we are concerned with mail returned as "Refused."[2] As it applies to the case before us,

> [t]he law makes no presumption favoring valid issuance, service, and return of citation in a default judgment case. *Uvalde Country Club v. Martin Linen Supply Company*, 690 S.W.2d 884, 885 (Tex. 1985). At a minimum the certificate of service must affirmatively show *notice given.* An unclaimed letter from the Secretary of State's office can hardly further the aim and objective of the long-arm statute, which is to provide reasonable notice of the suit and an opportunity to be heard.

> We see a distinction between "unclaimed" mail and "refused" mail. If a defendant were to know of the existence of certified mail and *refuse* to accept it, this would tend to show the defendant did in fact have notice. On the other hand, "unclaimed" could very well mean that the plaintiff gave the Secretary of State the wrong address for the defendant, in which case the defendant would not receive notice, due process would not be observed, and a plaintiff could pervert the process by giving incorrect addresses. . . . The defendant cannot thwart service by refusing certified mail.

*Barnes*, 840 S.W.2d at 750.

## E. Analysis

### 1. Service of Process

The facts here present a unique situation. While Carter was required to provide the secretary of state with a correct address, a fact question is presented by the evidence, not as to whether the address was correct in the normal sense, but as to whether it was correct in the sense of being complete. It is undisputed that the property containing the main house and guest house was 333 Howard

---

[2]According to the USPS Domestic Mail Manual, this designation means, "Addressee refused to accept mail or pay postage charges on it." United States Postal Service, Domestic Mail Manual, § 507(1.4.1), *available at* http://pe.usps.gov/text/dmm300/507.htm#1113039 (last visited Aug. 18, 2011); *see also* 39 C.F.R. 111.1 (2005).

Street, but some evidence was presented to create a fact issue as to whether Shackelford's address was 333 or 333B Howard Street.[3]

There is also a basic and fundamental fact question about notice of the suit and whether a purported lack of notice was due to Shackelford's actions.[4] He averred in his affidavit that he had never refused, nor instructed anyone to refuse, "suit papers," and yet the postal service returned the suit papers marked as "Refused," indicating that Shackelford refused to accept this mail. And, although the postal stamp of "Refused" is generally conclusive and would otherwise resolve this appeal in Carter's favor, if the address that Carter provided to the secretary of state was not correct in the sense that it was incomplete, then failure of service occurred and Shackelford would prevail. *See Barnes*, 840 S.W.2d at 750; *see also Royal Surplus Lines Ins. Co.*, 840 S.W.2d at 383. Therefore, because there is a fact issue as to whether Shackelford's USPS-recognized mailing address was 333 or 333B Howard Street, and because it is necessary to determine Shackelford's correct address before the legal effect of

---

[3]We note that Shackelford asserts that he was instructed by a postal representative to use 333B as his mailing address and submitted bank statements addressed to him at that address as evidence. We also note that section 507(1.2.4) of the USPS Domestic Mail Manual states that "[r]ecords of address changes caused by USPS adjustments are kept by the local Post Office for 3 years," and, therefore, any postal service adjustment to Shackelford's address may be on record at the post office branch serving 333 Howard Street. *See* United States Postal Service, *supra* note 2, § 507(1.2.4).

[4]Although Carter argues that the lease and the fact that an August 20, 2009 letter addressed to Shackelford and returned "Shackelford Moved Left No Address" shows that Shackelford lived at 333 Howard Street, this fact does not resolve that a fact issue has been raised.

9

Carter's service at the secretary of state's office and the return of "Refused" can be assessed, summary judgment was improper, and we sustain Shackelford's first issue.

### 2. Due Diligence

In his second issue, Shackelford argues that because he filed his bill of review within the four-year limitations period, the trial court erred by granting Carter's summary judgment motion. We agree.

Both in its motion for summary judgment and on appeal, Carter cited a single case, *Conrad v. Orellana*, 661 S.W.2d 309 (Tex. App.—Corpus Christi 1983, no writ), to support its argument that Shackelford did not use due diligence in his efforts to submit a bill of review. But *Conrad* is factually distinguishable. In *Conrad*, the court of appeals held that a defendant *that had received proper service of process and had filed a general denial* but then failed to appear at trial, in person or through an attorney, could not file a bill of review challenging the judgment against her because (1) there was evidence that her attorney received notice of the hearing, the defendant did not file a motion for new trial or perfect an appeal, and the judgment was in accordance with the pleadings, (2) because "all matters of fact in law were submitted . . . for the [trial] court's determination," and (3) because the trial court held that the facts and law were in the plaintiff's favor. *Id.* at 311–12. Here, whether Shackelford received proper notice is in dispute, no answer was filed, and a default judgment was granted. Thus, *Conrad* is inapposite, and we conclude that Shackelford's bill of review, submitted within the four-year limitations period, was timely. Accordingly, we hold that the trial

10

court erred to the extent that it based summary judgment in Carter's favor on its argument that Shackelford did not exhibit due diligence in pursuing his bill of review. We sustain Shackelford's second issue.

## IV. Conclusion

Having sustained both of Shackelford's issues, we reverse the trial court's summary judgment and remand this cause to the trial court.


BOB MCCOY
JUSTICE

PANEL: WALKER and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: August 31, 2011